ROGER THOMAS, Plaintiff-Appellee and Cross-Appellant, v. GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—90—0279

Opinion filed March 6, 1991.

Gary D. Nelson, of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellant.

Richard W. Zuckerman, of Peoria, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, General American Life Insurance Company, appeals a determination by the trial court holding that defendant's denial of an insurance benefit claim was arbitrary and capricious. We reverse. Plaintiff filed a cross-appeal contesting the amount of the trial court's award of plaintiff's attorney fees. Since we have reversed the trial court, the issue of plaintiff's attorney fees will not be discussed. It is moot.

The plaintiff, Roger Thomas, filed a complaint against the defendant to recover benefits under a group medical insurance policy. Plaintiff sought to recover for surgery performed to correct a deformity of his son's ears. Plaintiff alleged that the bilateral otoplasty surgery was performed to alleviate what is known as "lop ear syndrome." Defendant denied benefits because it believed the surgery was cosmetic in nature. Defendant's policy covered medical expenses for the therapeutic treatment of an injury or sickness but excluded payment for cosmetic, plastic, reconstructive, or restorative surgery unless the expenses were incurred to repair a disfigurement caused by a birth defect.

The defendant filed a motion to dismiss on the basis the employee's State law and common law claims were preempted by the Employee Retirement Income Security Act of 1974 as amended (ERISA) (29 U.S.C. §1001 et seq. (1988)) and plaintiff's sole cause of action must take the form of an ERISA claim. After the trial court granted defendant's motion, plaintiff filed an amended complaint pursuant to 29 U.S.C. section 1132.

Defendant filed a motion for summary judgment on the basis the surgery performed on Cortney Thomas was for the cosmetic correction of protuberant ears. Plaintiff filed a response to the motion for summary judgment stating there was a genuine dispute as to certain material facts. Plaintiff alleged the alteration of the external ear may have therapeutic value. Plaintiff further alleged the variation of the external ears may be characterized as a congenital deformity. Fol-

lowing a hearing, the court denied the motion. Defendant filed a motion to reconsider the denial of summary judgment on the basis plaintiff admitted in its response to the motion for summary judgment that the surgery performed was for a cosmetic correction of protuberant ears. The court denied defendant's motion to reconsider.

The case proceeded to trial on June 7, 1989. The medical evidence produced at the time of trial consisted of the evidence depositions of plaintiff's treating physician, Dr. Harrison Putnam, and defendant's medical expert, Dr. Robert Hart.

Dr. Putnam testified he first saw Cortney Thomas on March 13, 1985, for an ear infection. Dr. Putnam observed Cortney had an unsightly protrusion of the ears caused by the overdevelopment of the concave concha and a flattened antihelix with an absence of an antihelic fold. In 1986, Cortney's parents called Dr. Putnam's office requesting plastic surgery on his ears.

Dr. Putnam performed an otoplasty on Cortney to correct the prominence of the ear and to create a normal looking ear. According to Dr. Putnam, lop ear syndrome is considered a birth deformity, but is not considered a birth defect. Protuberant ears, in Dr. Putnam's opinion, could not properly be described as a birth defect. Dr. Putnam testified further that a birth defect usually consists of the absence of a body part or a portion of a body part whereas a deformity is a deviation from the norm in terms of development. Dr. Putnam also stated he considered the surgery to be medically necessary as a result of the psychological distress Cortney suffered at school because of the appearance of his ears.

Dr. Robert Hart, defendant's expert, also testified by way of an evidence deposition. Dr. Hart is a pediatrician whose practice includes the diagnosis and treatment of birth defects and psychological illness. It was Dr. Hart's opinion the surgery performed on Cortney was cosmetic. Dr. Hart further opined the surgery performed was not therapeutic treatment of illness or injury as Cortney was not suffering from any type of psychological illness.

On August 1, 1989, the trial court ruled the congenital condition known as "lop ear syndrome" was a birth defect within the meaning of the insurance policy. The court further ruled the surgery performed was for a correction of a disfigurement caused by a birth defect and the treatment afforded to Cortney was therapeutic because it improved the child's well-being. The court concluded the failure of the defendant to pay was arbitrary and capricious.

Plaintiff contends the standard of review to be applied in this case is a *de novo* standard of review. Plaintiff asserts that under a *de novo*

standard, the trial court did not err by ruling the defendant must pay the medical benefits for the plaintiff's surgery. Defendant contends, however, the plaintiff waived this argument by not raising this point before the trial court. Defendant posits, alternatively, that under any appropriate standard of review, this case must be reversed. We agree.

■ The question of the appropriate standard of review in ERISA cases was resolved by the Supreme Court of the United States on February 21, 1989, in the case of *Firestone Tire & Rubber Co. v. Bruch* (1989), 489 U.S. 101, 103 L. Ed. 2d 80, 109 S. Ct. 948. Although the parties and the trial court overlooked the Supreme Court's decision at the trial level, we are cognizant of the fact this opinion changed the standard of review of ERISA cases and must be considered here.

In *Firestone*, the court stated:

"Consistent with established principles of trust law, we hold that a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." (489 U.S. at 115, 103 L. Ed. 2d at 95, 109 S. Ct. at 956.)

Thus, a plan that omits definitions or provisions about construction mandates *de novo* review by the trial court, while a plan that expressly grants the administrator or trustee leeway in his/her interpretation of the plan yields deferential review. See *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust* (7th Cir. 1990), 901 F.2d 1369.

It is patently clear the plan in the foregoing case does not expressly confer discretionary authority on the plan administrator to interpret the language of the health plan. In our opinion, the *de novo* standard of review is required here. However, it is not necessary to reach a determination on this point because under either standard of review, we find the evidence overwhelmingly shows the trial court's decision is not supported by the record and must be reversed. See *Rizzo v. Travelers Insurance Co.* (1989), 193 Ill. App. 3d 67, 549 N.E.2d 810; *Kennedy v. Deere & Co.* (1989), 192 Ill. App. 3d 18, 548 N.E.2d 610.

■ Where the provisions of an insurance policy are clear and unambiguous, they should be literally interpreted and strictly construed. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 456 N.E.2d 348.) Moreover, a decision to deny benefits is not to be reversed unless it is not supported by substantial evidence. (*Nevill v. Shell Oil Co.* (9th Cir. 1987), 835 F.2d 209.) The policy in question cov-

ers expenses incurred due to injury or sickness. A covered expense means only the expense incurred for medical care and supplies which are necessary and customary and which are prescribed by a doctor for the therapeutic treatment of injury or sickness, and further, which are not excluded under the exception provision of the policy. Benefits are not payable for cosmetic, plastic, reconstructive or restorative surgery unless such covered expenses are incurred for the repair of a disfigurement caused by accidental injury or a birth defect.

In the instant case, the undisputed evidence at trial demonstrates the surgery performed on Cortney was cosmetic. The purpose of the surgery was to improve Cortney's appearance. Even the plaintiff's own treating doctor admitted the purpose of the surgery was aesthetic or cosmetic in nature. Cosmetic surgery is plastic surgery which primarily seeks to alter the appearance or improve the appearance of a body part. Cortney's surgery was performed to correct the aesthetic appearance of his ears.

Once it was established the surgery was cosmetic, the trial court erroneously found the surgery performed on Cortney was for a correction of a disfigurement caused by a birth defect. Defendant's policy would only cover cosmetic surgery incurred to repair a disfigurement caused by accidental injury or a birth defect. Plaintiff's treating doctor confirmed "lop ear syndrome" was not a birth defect. According to plaintiff's doctor, "lop ear syndrome" is considered a birth deformity because it does not consist of the absence of the ear itself. A birth defect usually consists of the absence of a body part whereas a deformity creates a deviation from normal development. While the absence of the external ear accurately shows an example of a birth defect, the variation in the external appearance of the ear, such as plaintiff's, does not exemplify a defect.

The trial court improperly held further that the treatment given to Cortney was therapeutic because it improved the child's well-being and provided a psychological benefit as well. However, there is absolutely no evidence in the record to support this conclusion. Although the policy does not define the term "therapeutic," there was absolutely no evidence adduced at trial to show that Cortney suffered from psychological problems as a result of his appearance. In fact, Cortney's mother testified that no one had ever diagnosed Cortney as suffering from a psychiatric or psychological illness, nor did he ever receive any kind of psychological counseling or treatment. Even plaintiff's doctor stated he never referred Cortney to a psychiatrist or psychologist for treatment even though he was aware Cortney was being harassed at school about his ears. Plaintiff's doctor did testify the sur-

gery was partially therapeutic because a psychological benefit would be achieved. However, taken to a logical extreme, cosmetic surgery always fulfills some psychological advantage. The whole purpose behind cosmetic surgery is to improve one's appearance. This is exactly the reason why plaintiff's son obtained surgery.

Based on the foregoing, the judgment of the circuit court of Tazewell County in favor of the plaintiff is reversed. Accordingly, we need not consider plaintiff's cross-appeal for attorney fees.

Reversed.

SLATER and GORMAN, JJ., concur.